# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M.S.,                                    :
                        Petitioner       :
                                         :
        v.                               :    No. 335 M.D. 2017
                                         :    Argued: November 14, 2018
Pennsylvania State Police,               :
                        Respondent       :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
         HONORABLE ROBERT SIMPSON, Judge
         HONORABLE P. KEVIN BROBSON, Judge
         HONORABLE PATRICIA A. McCULLOUGH, Judge
         HONORABLE ANNE E. COVEY, Judge
         HONORABLE MICHAEL H. WOJCIK, Judge
         HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY JUDGE BROBSON          FILED:  June 11, 2019


        Petitioner M.S. filed a petition for review in the nature of a complaint in mandamus and for declaratory relief (Petition) against the Pennsylvania State Police (PSP), relating to PSP's designation of Petitioner as a sex offender under Pennsylvania's Sex Offender Registration and Notification Act (SORNA),[1] which

---

[1] As we explained in *Dougherty v. Pennsylvania State Police*, 138 A.3d 152 (Pa. Cmwlth. 2016) (en banc):

> Courts have also referred to SORNA as the Adam Walsh Act. SORNA is the General Assembly's fourth enactment of the law commonly referred to as Megan's Law. Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter. Megan's Law II was enacted on May 10, 2000[,] in response to Megan's Law I being ruled unconstitutional by our Supreme Court in *Commonwealth v. Williams*, . . . 733 A.2d 593 ([Pa.] 1999). Our Supreme Court held that some portions of Megan's Law II were unconstitutional in *Commonwealth v. Gomer Williams*, . . .

has now been replaced by SORNA II.  Before the Court is Petitioner's application for summary relief (Application), through which Petitioner seeks an order: (1) declaring that the application of SORNA registration requirements to him violates his state and federal constitutional rights, (2) declaring that he is not subject to registration under SORNA, and (3) directing PSP to remove his information from its public internet website and registry.  We now grant Petitioner's Application, in part, on nonconstitutional grounds, and direct PSP to provide Petitioner with a

832 A.2d 962 ([Pa.] 2003), and the General Assembly responded by enacting Megan's Law III on November 24, 2004.  The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16945, and the Pennsylvania General Assembly responded by passing SORNA on December 20, 2011[,] with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006."  42 Pa. C.S. § 9799.10(1).  SORNA went into effect a year later on December 20, 2012.  Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution.  [*Cmwlth.*] *v. Neiman*, 84 A.3d 603, 616 ([Pa.] 2013).  However, by the time it was struck down, Megan's Law III had been replaced by SORNA.

*Dougherty*, 138 A.3d at 155 n.8.  Our Supreme Court, by decision and order dated July 19, 2017, declared SORNA unconstitutional in *Commonwealth v. Muniz*, 164 A.3d 1189, 1193 (Pa. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 925 (2018).

The General Assembly responded to the *Muniz* decision by enacting the Act of February 21, 2018, P.L. 27 (Act 10).  Shortly thereafter, the General Assembly reenacted and amended various provisions of Act 10 by the Act of June 12, 2018, P.L. 140 (Act 29).  The statutory provisions of Acts 10 and 29 are set forth at 42 Pa. C.S. §§ 9799.10-.75, and we will refer to them herein as SORNA II.

Recently, in *Commonwealth v. Wood*, ___ A.3d ___ (Pa. Super., Nos. 1193 & 1194 MDA 2017, filed April 15, 2019) (en banc), the Superior Court concluded that SORNA II was unconstitutional as applied based on *ex post facto* concerns when the offender committed the offense prior to the effective date of SORNA in 2012 and the offense was not an offense that would have triggered registration requirements at the time the offender committed the offense.  Here, Petitioner committed the offense in 2015 (*see* Application, Ex. 2), and, therefore, the Superior Court's analysis in *Wood* is not relevant to our analysis here today.

2

hearing and adjudication as required by the Administrative Agency Law, 2 Pa. C.S. §§ 501-508, 701-704, as more fully discussed herein.

## I. BACKGROUND

In 2016, while a Cadet at the United States Coast Guard Academy, Petitioner was convicted at a trial by general court-martial of sexual assault in violation of Article 120(b)(3)(A) of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(b)(3)(A).[2] Petitioner was sentenced to be discharged from Coast Guard service and confined for one year. The sentence did not include a requirement to register as a sex offender. Petitioner appealed the UCMJ conviction and began to serve his sentence.[3] After his release from confinement and return to Pennsylvania, Petitioner, consistent with a notification provided to him by the Department of Defense (DOD), reported to PSP on June 26, 2017. On June 27, 2017, while SORNA was still in effect, PSP designated Petitioner as a Tier III sex offender under

---

[2] Article 120(b)(3)(A) of the Uniform Code of Military Justice provides:

(b) Sexual assault.—Any person subject to this chapter who—

    (3) commits a sexual act upon another person when the other person is incapable of consenting to the sexual act due to—

        (A) impairment by any drug, intoxicant, or other similar substance, and that condition is known *or reasonably should be known* by the person; . . .

. . .

is guilty of sexual assault and shall be punished as a court-martial may direct.

(Emphasis added.)

[3] Petitioner's appeal was still pending as of the date Petitioner filed the subject Petition with this Court.

SORNA[4] based on the asserted similarity of his military offense to Section 3125(a)(4) of the Pennsylvania Crimes Code, 18 Pa. C.S. § 3125(a)(4).[5] On

---

[4] Section 9799.14 of SORNA, 42 Pa. C.S. § 9799.14, establishes a three-tiered system of classification of sexual offenses, with specific enumerated Pennsylvania and federal offenses listed under each tier. Section 9799.14(d) of SORNA provides, in part:

The following offenses shall be classified as Tier III sexual offenses:

(1) 18 Pa. C.S. § 2901(a.1) (relating to kidnapping).

(2) 18 Pa. C.S. § 3121 (relating to rape).

(3) 18 Pa. C.S. § 3122.1(b) (relating to statutory sexual assault).

(4) 18 Pa. C.S. § 3123 (relating to involuntary deviate sexual intercourse).

(5) 18 Pa. C.S. § 3124.1 (relating to sexual assault).

(6) 18 Pa. C.S. § 3124.2(a.1) [(relating to institutional sexual assault of a minor)].

(7) 18 Pa. C.S. § 3125 (relating to aggravated indecent assault).

(8) 18 Pa. C.S. § 3126(a)(7) [(relating to indecent assault where the complainant is less than 13 years of age)].

(9) 18 Pa. C.S. § 4302(b) (relating to incest).

(10) 18 U.S.C. § 2241 (relating to aggravated sexual abuse).

(11) 18 U.S.C. § 2242 (relating to sexual abuse).

(12) 18 U.S.C. § 2244 where the victim is under 13 years of age.

(13) *A comparable military offense or similar offense under the laws of another jurisdiction or country or under a former law of this Commonwealth.*

(14) An attempt, conspiracy or solicitation to commit an offense listed in paragraph (1), (2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12) or (13).

(15) (Reserved).

(16) Two or more convictions of offenses listed as Tier I or Tier II sexual offenses.

(17) One conviction of a sexually violent offense and one conviction of a sexually violent offense as defined in section 9799.55 (relating to registration).

4

June 29, 2017, PSP notified Petitioner that it had designated him as a Tier III sex offender subject to lifetime registration and publication. On July 5, 2017, Petitioner objected to the determination and requested a hearing. PSP did not respond to the request.

Petitioner filed the subject Petition with this Court on July 31, 2017, generally asserting that PSP has improperly designated Petitioner as a Tier III sex offender pursuant to SORNA.[6] More specifically, Petitioner asserts that PSP denied him due process, because it did not provide him with a meaningful opportunity to challenge his designation as a Tier III sex offender. Petitioner also contends that the application of SORNA to him violates his due process rights under *Muniz*. He further asserts that, because the military conviction is pending appeal, it is not final and cannot form a basis to compel registration. Finally, he asserts that he was not convicted of any offense under Pennsylvania law and was not convicted of any offense that would constitute a "comparable military offense or similar offense under the laws of another jurisdiction or country or under a former law of this

_____

(Emphasis added.)

[5] Section 3125(a)(4) of the Crimes Code provides, in part:

(a) . . . [A] a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

. . . .

(4) the *complainant is unconscious or the person knows that the complainant is unaware* that the penetration is occurring;

(Emphasis added.)

[6] Twelve days prior to Petitioner's filing of the Petition, the Supreme Court struck down SORNA as unconstitutional in *Muniz*. SORNA II became effective, in part, on February 21, 2018, with the enactment of Act 10.

5

Commonwealth,"[7] and, therefore, he does not qualify for Tier III sex offender designation.

## II. ISSUES

Petitioner raises the following arguments in support of his Application. First, Petitioner argues that PSP violated his due process rights by designating him as a Tier III sex offender without providing him a meaningful opportunity to be heard. In furtherance of that argument, Petitioner contends that the SORNA registration requirements implicate his rights to reputation and liberty. Second, Petitioner argues that PSP violated his criminal trial rights when it unilaterally imposed what he refers to as "the punitive Tier III requirements of SORNA"[8] in the absence of a criminal trial. As to this argument, Petitioner contends that, because registration requirements imposed as a result of the Tier III sex offender designation are punitive in nature, a *jury* (not PSP) would have to determine, by applying the beyond a reasonable doubt standard, whether Petitioner's actions subject him to designation as a Tier III sex offender. Third, Petitioner argues that SORNA's application of what he refers to as an unlawful irrebuttable presumption that every military offense under Article 120 of the UCMJ requires Tier III designation violates his due process rights. Finally, Petitioner argues that PSP erred in designating him as a Tier III sex offender under SORNA, because the military offense for which he was convicted was not comparable to a Tier III offense under Pennsylvania law. In support of this argument, Petitioner focuses on the different *mens rea* required by

---

[7] 42 Pa. C.S. § 9799.14(d)(13). We note that as part of the enumerated offenses, each tier includes as an offense "[a] comparable military offense or similar offense" under the laws of another jurisdiction, foreign country, or former law of this Commonwealth. *See* 42 Pa. C.S. §§ 9799.14(b)(21) (relating to Tier I sexual offenses), (c)(17) (relating to Tier II sexual offenses), and (d)(13) (relating to Tier III sexual offenses).

[8] (Petitioner's Br. at 5.)

6

the offenses under Article 120(b)(3)(A) of the UCMJ and Section 3125(a)(4) of the Crimes Code and argues that Section 120(b)(3)(A) of the UCMJ "cast[s] a wider net" or is more broad than Section 3125(a)(4) of the Crimes Code, thereby rendering them not comparable. (Petitioner's Br. at 18.) As a result of the above arguments, Petitioner requests the Court to grant declaratory and injunctive relief to protect his constitutional rights.

Petitioner filed the Application and a memorandum of law in support thereof on February 5, 2018, seventeen days prior to the enactment and effective date of SORNA II. Subsequent to the enactment of SORNA II, PSP filed a brief and Petitioner filed a reply brief, neither of which acknowledged the passage of SORNA II. Although Petitioner did not file an amended petition for review following the enactment of SORNA II, it is apparent to the Court that any distinctions that may exist between SORNA and SORNA II are irrelevant for purposes of our disposition of the issues now before the Court. As such, although Petitioner's arguments are couched in terms of SORNA, we will refer to the provisions of SORNA II throughout our analysis, where appropriate.

## III. DISCUSSION

As a threshold matter, we acknowledge our Supreme Court's cautionary instructions "that, as a general matter, it is better to avoid constitutional questions if a non-constitutional ground for [a] decision is available." *In re Stevenson*, 12 A.3d 273, 275 (Pa. 2010). Based upon a review of the parties' arguments, two overarching observations become pellucid: (1) the omphalos of Petitioner's challenge is his belief that PSP was required to provide him with a hearing to challenge the propriety of its equivalency determination designating him as a Tier III sex offender because he was not convicted of an expressly enumerated

7

offense set forth in Section 9799.14(d) of SORNA or SORNA II; and (2) Petitioner, even in the absence of constitutional due process concerns, is entitled to a hearing under the Administrative Agency Law for the reasons discussed below.

The term "adjudication," as used in the Administrative Agency Law, is defined as:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

2 Pa. C.S. § 101. Section 504 of the Administrative Agency Law, 2 Pa. C.S. § 504, provides, in part: "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." Failure to provide notice and an opportunity to be heard in connection with the issuance of an adjudication results in an invalid adjudication under Section 504 of the Administrative Law. *See Philadelphia Cty. Med. Soc'y v. Kaiser*, 699 A.2d 800, 806. (Pa. Cmwlth. 1997) (en banc) (*Kaiser*).

In *Kaiser*, this Court considered whether a decision by Linda S. Kaiser, Commissioner of the Insurance Department (Commissioner), approving the change in control of six subsidiaries of Blue Cross of Western Pennsylvania (Western Blue Cross) and Pennsylvania Blue Shield (Blue Shield) and approving the proposed bylaws of Highmark, the consolidated successor of the former Western Blue Cross and Former Blue Shield, constituted an adjudication under the Administrative Agency Law, such that it was appealable to this Court. The Commissioner asserted that there was nothing to appeal to this Court, because her determination to allow

8

the consolidation was not an appealable adjudication; rather, the Commissioner took the position that she had issued a determination from which no party could appeal, not even Highmark, had she denied its request.

For purposes of considering whether the Commissioner's determination constituted an adjudication for purposes of appellate review, we explained in *Kaiser* that "[t]o determine whether it is ready for judicial review, we must first determine whether the Commissioner's order is an 'adjudication.' If the agency action is not an 'adjudication,' then it is not subject to judicial review by way of appeal." *Id.* at 806. We observed:

> Because, by definition, an agency action only results in an adjudication when there is a final order, . . . only when those administrative appeals have been exhausted will the agency action become an adjudication subject to judicial review. Of course, if a party does not timely seek to have a hearing from an adverse agency adjudication, the adjudication becomes final and unappealable.
>
> *Even though the agency action has a direct impact on the person's rights or privileges, and is final so as to fall within the definition of an "adjudication", the action is not "valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa. C.S. § 504. Until a hearing is held before the administrative agency and a record of that hearing made, Section 504 of the Administrative Agency Law provides that the adjudication is not valid or effective.* The reason behind this requirement is that judicial review, absent a valid administrative adjudication or proper record, is a "premature interruption of the administrative process." Moreover, until a hearing, and, if necessary, the taking of evidence where facts are disputed, the issues cannot be properly clarified, whether there is a direct interest of the party taking the appeal and questions of fact sufficiently resolved to create a record upon which judicial review can be conducted.

9

*Id.* (emphasis added) (footnotes omitted) (citations omitted). Based upon this reasoning, we transferred the matter to the Insurance Department with instruction that it conduct a hearing pursuant to Section 504 of the Administrative Agency Law.

In the matter now before this Court, Petitioner was convicted of an offense not specifically enumerated in SORNA or SORNA II's Tier classification scheme. As a result, PSP necessarily engaged in a nonministerial act when it issued its equivalency determination designating Petitioner as a Tier III sex offender, because such a determination required PSP to determine whether the elements of the crimes were comparable for purposes of SORNA or SORNA II. Furthermore, PSP's equivalency determination affected Petitioner's personal rights or obligations, because the registration requirements have the potential to affect one's reputation[9] and impose continuing obligations on registrants. It is also apparent that, in rendering its equivalency determination, PSP did not afford Petitioner an avenue to challenge the determination through "reasonable notice of a hearing and an opportunity to be heard," as required by Section 504 of the Administrative Agency Law. Thus, PSP's equivalency determination constituted an invalid adjudication under the Administrative Agency Law.

---

[9] Petitioner has a personal right in his reputation. Although one's reputation is not protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, our Supreme Court has acknowledged that a person's reputation is protected by Article I, Section 1 of the Pennsylvania Constitution. *R. v. Dep't of Pub. Welfare*, 636 A.2d 142, 149 (Pa. 1994). Article I, Section 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." "[R]eputation is among the fundamental rights that cannot be abridged without compliance with state constitutional standards of due process." *Taylor v. Pa. State Police*, 132 A.3d 590, 605 (Pa. Cmwlth. 2016) (en banc) (overruling PSP's preliminary objection that petitioner failed to state claim under due process clause of Pennsylvania Constitution as it relates to SORNA's presumption).

For these reasons, we conclude that PSP must, consistent with the Administrative Agency Law, provide a sex offender with a post-equivalency determination administrative appeal remedy,[10] which must include reasonable notice of a hearing and an opportunity to be heard.[11]  Although Petitioner requested a post-determination hearing, PSP did not respond to his request.  Consequently, we declare that PSP must comply with the Administrative Agency Law and provide Petitioner with a post-determination administrative appeal remedy and a valid adjudication, which would then be appealable to this Court.  *See* 42 Pa. C.S. § 702. Because we are able to resolve this matter under the Administrative Agency Law, we will not address Petitioner's constitutional challenges at this juncture. Furthermore, we will not address the merits of whether Petitioner should be designated as a Tier III sex offender based upon his conviction under Article 120(b)(3)(A) of the UCMJ, as that issue will be the subject of further administrative proceedings before PSP.[12]

P. KEVIN BROBSON, Judge

---

[10] We note that the General Rules of Administrative Practice and Procedure expressly provide for such a post-determination administrative appeal remedy:  "Actions taken by a subordinate officer under authority delegated by the agency head may be appealed to the agency head by filing a petition within 10 days after service of notice of the action."  1 Pa. Code § 35.20.

[11] Our decision here should not be read as requiring PSP to conduct a trial-type evidentiary hearing in every case.  The Court envisions circumstances where PSP and a sex offender could agree to the submission of stipulations and/or documents into the record in lieu of an in-person evidentiary hearing.  Moreover, an evidentiary hearing is unnecessary if there are no material facts in dispute.  *Sal's Rest. Inc. v. Dep't of Health*, 67 A.3d 57, 61 (Pa. Cmwlth. 2013).

[12] Nothing herein prevents Petitioner from raising constitutional challenges, if appropriate, in an appeal to this Court following PSP's issuance of an adjudication.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M.S., : 
          Petitioner : 
           : 
      v. : No. 335 M.D. 2017
           : 
Pennsylvania State Police, : 
          Respondent : 


# **O R D E R**


AND NOW, this 11th day of June, 2019, Petitioner's application for summary relief is GRANTED to the extent that Petitioner sought an order from this Court, declaring that Respondent Pennsylvania State Police (PSP) must provide Petitioner with a post-determination administrative remedy and adjudication on the question of whether he should be designated as a Tier III sex offender as a result of his conviction for sexual assault under Article 120(b)(3)(A) of the Uniform Code of Military Justice, 10 U.S.C. § 920(b)(3)(A). PSP is directed to afford Petitioner an administrative remedy consistent with the accompanying opinion and the Administrative Agency Law, 2 Pa. C.S. §§ 501-508, 701-704.


                                                       _____

                                                       P. KEVIN BROBSON, Judge