IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C. J.,                                    :
                    Petitioner            :
                                          :
        v.                                : No.  363 M.D. 2021
                                          : Submitted:  April 14, 2022
Pennsylvania State Police,                :
                    Respondent            :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE[1]                              FILED:  June 20, 2023


        C.J. (Registrant) filed a Petition for Review (PFR) in our original jurisdiction seeking declaratory and injunctive relief in the form of an order terminating his obligation to register as a sexual offender in Pennsylvania under the applicable version of the Sexual Offender Registration and Notification Act (SORNA II).[2]  The

---

[1]  This opinion was reassigned to the opinion writer on January 23, 2023.

[2]  Former Section 9799.10 through 9799.75 of the Sentencing Code, *formerly* 42 Pa.C.S. §§ 9799.10 - 9799.75.  The prior registration requirements, commonly referred to as Megan's Law III, 42 Pa.C.S. §§ 9791-9799.9, expired as of December 20, 2012, and SORNA, 42 Pa.C.S. §§ 9799.10 - 9799.41, took effect on the same date.  Pursuant to the Pennsylvania Supreme Court's decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), the General Assembly amended SORNA by the Act of February 21, 2018, P.L. 27 (Act 10).  The Act of June 12, 2018, P.L. 140 (Act 29) reenacted and amended various provisions of Act 10.  The provisions of Act 10 and Act 29 may collectively be referred to as SORNA II.

Pennsylvania State Police (PSP) filed Preliminary Objections (POs) to Registrant's PFR, which are presently before this Court. Upon review, we sustain PSP's POs, in part, and overrule PSP's POs, in part.

## I.    Background

Registrant alleges the following facts in his PFR. In 1998, Registrant pled guilty to one count of aggravated sexual abuse in the third degree, which was a Class D felony in the State of New York.[3] PFR at 6. A New York court sentenced Registrant to serve a one and one-half to three-year term of incarceration. *Id.* Pursuant to Registrant's plea agreement, the sentencing court designated Registrant as a sexual offender under a section of the New York Corrections Law that required Registrant to register with the New York Division of Criminal Justice Services annually for a minimum of 10 years. *Id.*

Registrant moved from New York to Pennsylvania in the summer of 2000. *Id.* On November 19, 2019, the State of New York reduced Registrant's risk level from two to one. *Id.* As a result, if Registrant moved back to New York, he would not have to register as a sexual offender. *Id.* at 6-7. Nevertheless, PSP classified Registrant as a Tier III Offender under SORNA[4] and requires him to register for life in Pennsylvania. *Id.* at 7.

---

[3]  At the time, the New York Penal law defined the crime of aggravated sexual abuse in the third degree as follows:

> 1.  A person is guilty of aggravated sexual abuse in the third degree when he inserts a foreign object in the vagina, urethra, penis or rectum of another person:
>     (a) By forcible compulsion; or
>     (b) When the other person is incapable of consent by reason of being physically helpless; or
>     (c) When the other person is less than eleven years old.

N.Y. Penal Law § 130.66(1)(a)-(c) (McKinney 1996).

[4]  Registrant referenced prior versions of SORNA II in his PFR, including Megan's Law and SORNA. We will discuss the distinction between Megan's Law, SORNA, and SORNA II *infra*.

Registrant asserts that Pennsylvania law does not require him to register in Pennsylvania and that PSP misclassified him as a Tier III Offender under SORNA. PFR at 7. Registrant also asserts that PSP misinterpreted and misapplied the law in that even if he was required to register in Pennsylvania, it should have only been for 10 years. *Id.* Thus, Registrant asserts PSP's current registration requirement is unlawful and, despite his attempts, PSP "will not provide a process for [Registrant] to attempt to remedy or challenge its incorrect and/or misapplied registration requirements." *Id.* at 7-8.

Registrant also asserts PSP's registration requirements violate the constitutional prohibition against *ex post facto* laws, and the legal mandates of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013),[5] relating to his procedural and substantive due process rights.

PSP filed POs, in the nature of demurrers, to Registrant's PFR. PSP asserts this Court should dismiss Registrant's PFR because (a) Registrant's *ex post facto* challenge lacks merit, (b) Registrant's due process challenges lack merit, (c) Registrant's challenge to his registration obligations under "SORNA" are moot because SORNA II governs this matter, and (d) Registrant failed to exhaust his administrative remedies. *See* POs at 3-5.

## II. Analysis

"In ruling on preliminary objections in the nature of a demurrer, [this] Court must accept as true all well-pleaded material facts and all inferences reasonably deducible therefrom." *Savage v. Storm*, 257 A.3d 187, 191 (Pa. Cmwlth. 2021)

---

[5] In *Commonwealth v. Butler*, 226 A.3d 972, 976 n.3 (Pa. 2020), the Pennsylvania Supreme Court explained that "[i]n *Apprendi* and *Alleyne*, the Supreme Court of the United States held [that] any fact, which increases the statutory maximum penalty (*Apprendi*), or the mandatory minimum sentence (*Alleyne*), must be submitted to a jury and proven beyond a reasonable doubt."

3

(citations omitted). We are not bound, however, by "legal conclusions, argumentative allegations, unwarranted inferences from facts, or expressions of opinion." *Id.* (citations omitted). "We 'may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on the claim, and we must resolve any doubt in favor of the petitioner.'" *Id.* (citation omitted). When reviewing preliminary objections in the nature of a demurer, we "may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted." *Armstrong Cnty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013) (citation omitted).

Registrant seeks declaratory relief in the form of a declaration that Registrant is not required to register as a sexual offender in Pennsylvania. *See* PFR at 2, 9. Pursuant to the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, this Court has discretion to refuse to grant a declaratory judgment where the judgment "would not terminate the uncertainty or controversy giving rise to the proceeding." 42 Pa.C.S. § 7537. As a result, "the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction." *Brouillette v. Wolf*, 213 A.3d 341, 357 (Pa. Cmwlth. 2019).

Registrant also seeks injunctive relief in the form of an order of this Court prohibiting PSP from requiring him to register as a sexual offender. PFR at 9. "To justify the award of a permanent injunction, the party seeking relief must establish: [(1)] that his right to relief is clear, [(2)] that an injunction is necessary to avoid an injury that cannot be compensated by damages, and [(3)] that greater injury will result from refusing rather than granting the relief requested." *City of Phila. v. Armstrong*, 271 A.3d 555, 560 (Pa. Cmwlth. 2022) (internal quotations and citation omitted). Unlike a preliminary injunction, the party seeking a permanent injunction

4

"need not establish either irreparable harm or immediate relief[,] and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." *Id.* (internal quotations and citation omitted).

## A.  Registrant's *Ex Post Facto* Claim

Registrant asserts in his PFR that PSP's application of SORNA's registration requirements to his pre-SORNA conviction in New York constitutes an *ex post facto* violation. *See* PFR at 5.  The Pennsylvania Supreme Court, however, has determined that retroactive application of SORNA II's registration requirements is "nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws." *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020).  Thus, Registrant's *ex post facto* claim is not a claim upon which this Court could grant Registrant relief, and we sustain PSP's PO and dismiss Registrant's allegations of an *ex post facto* violation.

## B.  Registrant's Due Process Claims

Registrant next asserts that PSP's registration requirement violates his due process rights, as articulated in *Apprendi* and *Alleyne*.  With respect to these claims, we recently explained in *J.B. v. Pennsylvania State Police*, 273 A.3d 77 (Pa. Cmwlth. 2022) that

> [w]e held in *R.C.* [*v. Evanchick* (Pa. Cmwlth., No. 223 M.D. 2019, filed March 17, 2021),] that where a petitioner raises a colorable due process claim under the irrebuttable presumption doctrine, the petitioner "must be given the opportunity to present evidence in an effort to rebut the legislative finding with respect to an adult sexual offender's recidivation rates and the effectiveness of a tier-based registration and notification system." *R.C.*, slip op. at 18. The offender in *R.C.* averred, *inter alia*, that most registrants pose no higher risk of future criminal conduct than people not on the sex offender registry; that the registry fails to achieve its purpose of protecting the public; and that the registry makes the residents of the Commonwealth less safe. The offender further averred that there is overwhelming empirical

5

evidence that relatively few people present a high risk of recidivism and, in fact, most present almost no risk after a period of 15 years from the date of the crime. *Id.* at 20. We held that the offender's averments, if accepted as true, stated "a colorable claim as to the scientific consensus regarding [SORNA II's] irrebuttable presumption," and the offender "should be given the opportunity to prove his contentions through scientific studies or comparable evidence that would satisfy this element of the analysis." *Id.* at 21-22.

By contrast, here, [the registrant's] petition for review averred, in conclusory fashion, that "[t]he registration statutes do not give offenders the opportunity to challenge this presumption before they are automatically subject to the registration provisions," and the "public nature of the registry and the internet site maintained by [PSP] harms a registrant's reputation." . . . The petition made no averments that the presumption established in Section 9799.51(a) of Subchapter I of SORNA II "is not universally true" or that "a reasonable alternative means exists for ascertaining the presumed fact." As such, [the registrant] does not state a due process claim upon which relief could be granted.

*J.B.*, 273 A.3d at 84-85.

Similar to the registrant in *J.B.*, Registrant's PFR avers in a conclusory manner that the registration requirements PSP enforces violate *Apprendi* and *Alleyne*, as follows:

24. [Registrant's] registration requirements, as applied by [PSP] violate the legal mandates of *Alleyne* and *Apprendi*, by imposing a mandatory blanket registration for life under SORNA, which is predicated upon an unscientific and unlawful fallacy: its irrefutable presumption that [Registrant] presents a future danger because he pled guilty once in 1998, in New York, and then moved to Pennsylvania.

25. There is nothing of record in this case which suggests that [Registrant] presents a threat of future harm to anyone under any circumstances.

26. [Registrant] has made extraordinary efforts, but to no avail, to have [PSP] recognize and apply SORNA correctly in order to apply the correct tier, and to apply the requirements of *Alleyne* and *Apprendi*.

6

PFR at 8. As in *J.B.*, Registrant's PFR "does not state a due process claim upon which relief could be granted." *J.B.*, 273 A.3d at 85. Accordingly, we sustain PSP's PO and dismiss Registrant's allegations of due process violations pursuant to the mandates of *Apprendi* and *Alleyne*.

### C. SORNA

In its third preliminary objection, PSP asserts that Registrant has only challenged his obligations to register under "SORNA." *See* POs at 4. Noting that SORNA II is the law in Pennsylvania, not SORNA, PSP asserts that we should dismiss Registrant's challenge to SORNA's registration requirements as moot. *Id.*

We are not persuaded by PSP's argument. Registrant references both SORNA and Megan's Law in his PFR. *See* PFR at 9. In addition, Registrant's proposed order, which was attached to his PFR, references "any other law." Although neither SORNA nor Megan's Law are technically the name of Pennsylvania's current law governing sexual offender registration, both are the names of former sexual offender statutes, and both are colloquial terms which the public generally uses to refer to sexual offender registration. In fact, PSP still uses the term Megan's Law to refer to Pennsylvania's sexual offender registration statute.[6] Upon review of PSP's POs, it is clear that PSP was able to understand Registrant's claims and prepare a defense to those claims. As a result, Registrant's use of the colloquial terms "Megan's Law" and "SORNA" has not prejudiced PSP in any way, and we decline to impose the sanction of dismissing Registrant's PFR for such an inconsequential, technical deficiency.

---

[6] Corporal Matthew Webb signed an Unsworn Declaration in this matter asserting he was "assigned to [PSP's] **Megan's Law Section**" and "[p]art of [his] job responsibilities include the review of documentation relating to sexual offenders that are required to register under **Megan's Law** in the Commonwealth of Pennsylvania." *See* Respondent's Br., Exhibit A (emphasis added).

## D. Exhaustion of Administrative Remedies

In its final preliminary objection, PSP cites *M.S. v. Pennsylvania State Police*, 212 A.3d 1142, 1148-49 (Pa. Cmwlth. 2019), to assert that "the State Police [makes] available to out-of-state offenders a hearing if an offender believes the equivalent offense for which he is registering under Pennsylvania law is incorrect." POs at 5. More specifically, PSP attached the "unsworn declaration of Corporal Matthew Webb" (Webb) to its Brief, in which Webb asserts "[t]he State Police will, **upon request** of a sexual offender who was convicted out-of-state or through a military court-martial, conduct an administrative hearing if the offender believes that their registration period is incorrect or that they should not be required to register at all," and "[t]here is no record of ever receiving any request from [Registrant] to have a hearing to challenge his obligation to register as a sexual offender." *See* Respondent's Br., Exhibit A (emphasis added). Since Registrant has not requested an administrative hearing, PSP asserts Registrant failed to exhaust his administrative remedies and this Court should dismiss his PFR. *Id.*

Based upon its POs and Webb's unsworn declaration, it appears to this Court that PSP does not understand its obligation to provide out-of-state or military court-martialed sexual offenders with a post-equivalency determination administrative appeal remedy. In *M.S.*, the registrant moved to Pennsylvania after having been convicted by general court-martial of a sexual offense. *M.S.*, 212 A.3d at 1144. In 2017, "PSP designated [the registrant] as a Tier III sex offender under SORNA based on the asserted similarity of his military offense" to a Pennsylvania Crimes Code violation. *Id.* at 1144-45. PSP notified the registrant of its designation and the registrant objected to the designation and requested a hearing, but PSP did not respond to the registrant's request. *Id.* at 1145.

In *M.S.*, we evaluated whether PSP's equivalency determination constituted a valid adjudication as follows:

> Section 504 of the Administrative Agency Law,[7] 2 Pa.C.S. § 504, provides, in part: "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." Failure to provide notice and an opportunity to be heard in connection with the issuance of an adjudication results in an invalid adjudication under Section 504 of the Administrative Law. *See Philadelphia [Cnty.] Med. Soc'y v. Kaiser*, 699 A.2d 800, 806 (Pa. Cmwlth. 1997) (en banc) (*Kaiser*).
>
> . . . .
>
> In the matter now before this Court, [the petitioner] was convicted of an offense not specifically enumerated in SORNA or SORNA II's Tier classification scheme. As a result, PSP necessarily engaged in a nonministerial act when it issued its equivalency determination designating [the petitioner] as a Tier III sex offender, because such a determination required PSP to determine whether the elements of the crimes were comparable for purposes of SORNA or SORNA II. Furthermore, PSP's equivalency determination affected [the petitioner's] personal rights or obligations, because the registration requirements have the potential to affect one's reputation and impose continuing obligations on registrants. It is also apparent that, in rendering its equivalency determination, PSP did not afford [the petitioner] an avenue to challenge the determination through "reasonable notice of a hearing and an opportunity to be heard," as required by Section 504 of the Administrative Agency Law. Thus, PSP's equivalency determination constituted an invalid adjudication under the Administrative Agency Law.
>
> For these reasons, we conclude that PSP must, consistent with the Administrative Agency Law, provide a sex offender with a post-equivalency determination administrative appeal remedy, which must include reasonable notice of a hearing and an opportunity to be heard. Although [the petitioner] requested a post-determination hearing, PSP did not respond to his request. Consequently, we declare that PSP must comply with the Administrative Agency Law and provide [the

---

[7]   2 Pa.C.S. §§ 501-508, 701-704.

9

petitioner] with a post-determination administrative appeal remedy and a valid adjudication, which would then be appealable to this Court. *See* 42 Pa. C.S. § 702.

*M.S.*, 212 A.3d at 1147-49 (footnotes omitted).

*M.S.* did not suggest that making a post-equivalency hearing available upon the request of a registrant was acceptable. Instead, *M.S.* clearly and unambiguously stated that an equivalency determination is an invalid agency adjudication unless PSP complies with Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, and provides the registrant with "reasonable notice of a hearing and an opportunity to be heard" before issuing a final adjudication. *M.S.*, 212 A.3d at 1149; 2 Pa.C.S. § 504.

We recognize that this Court decided *M.S.* after PSP issued Registrant's equivalency determination. Nevertheless, PSP has not provided any information to suggest that it complied with the Administrative Agency Law in issuing Registrant's equivalency determination. Instead, its assertions of record tend to show that it likely failed to afford Registrant with reasonable notice of a hearing[8] and an opportunity to be heard, as required by Section 504 of the Administrative Agency Law.

In this matter, Registrant asserts in his PFR that he has "made extraordinary efforts" and presented information to PSP to show PSP that its equivalency determination was incorrect. *See* PFR at 7-8. In addition, he asserts that PSP "will not provide a process for [Registrant] to attempt to remedy or challenge its incorrect and/or misapplied registration requirements." *Id.* Regardless of the truth or falsity of these assertions, the Administrative Agency Law does not place any burden upon a registrant to seek out a hearing to challenge PSP's equivalency determinations.

---

[8] Providing a procedure for a registrant *to request* a hearing does not fulfill this requirement.

10

Rather, to comply with the Administrative Agency Law, PSP must schedule a post-equivalency determination hearing and provide the registrant with reasonable notice of that hearing and an opportunity to be heard. Only after conducting this hearing can PSP issue a valid adjudication.

## III. Conclusion

Since PSP has not introduced any facts that would establish that Registrant's equivalency determination was a valid adjudication under the Administrative Agency Law, we overrule PSP's PO regarding Registrant's failure to exhaust administrative remedies. The time for filing a further responsive pleading is stayed until further order of court.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C. J.,                              :
              Petitioner           :
                                   :
      v.                           : No.  363 M.D. 2021
                                   :
Pennsylvania State Police,         :
              Respondent           :

# **O R D E R**

**AND NOW**, this 20th day of June 2023, upon consideration of the Pennsylvania State Police's preliminary objections to C.J.'s Petition for Review, we **SUSTAIN** preliminary objections I and II regarding *ex post facto* laws and violations of C.J.'s due process rights, as articulated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013).  Accordingly, those claims are **DISMISSED**.  We **OVERRULE** preliminary objection III regarding mootness due to the use of "SORNA" and "Megan's law" instead of "SORNA II."  We also **OVERRULE** preliminary objection IV regarding exhaustion of administrative remedies.

The time for filing a further responsive pleading is **STAYED**, and a status conference is hereby scheduled for Wednesday, July 12, 2023, at 10:00am.  At the status conference, the parties shall be prepared to provide the court with an update on the status of C.J.'s post-equivalency hearing.  *See M.S. v. Pa. State Police*, 212 A.3d 1142, 1149 (Pa. Cmwlth. 2019); 2 Pa.C.S. § 504.  The status conference shall be conducted by telephone call with counsel of record and shall be heard by a

designated judge of this Court.  The Court will contact counsel of record to confirm the call and to provide the call-in information.

_____
STACY WALLACE, Judge