# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A.L.,
          Petitioner

      v. : No. 674 C.D. 2020
                    : Argued: February 8, 2021

Pennsylvania State Police,
          Respondent

BEFORE: HONORABLE P. KEVIN BROBSON, President Judge
           HONORABLE MARY HANNAH LEAVITT, Judge (P.)
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
PRESIDENT JUDGE BROBSON       FILED: March 8, 2021

A.L. (Petitioner) petitions for review of an order of the Pennsylvania State Police (PSP), dated June 30, 2020. PSP adopted a hearing examiner's proposed adjudication and order, thereby affirming the determination of its Megan's Law Section that Petitioner's conviction under Article 120 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(b)(3)(A),[1] is comparable to a conviction under Section 3124.1 of the Crimes Code, 18 Pa. C.S. § 3124.1,[2] and that Petitioner

---

[1] Article 120 of the UCMJ, 10 U.S.C. § 920(b)(3)(A), provides:

(b) Sexual assault.--Any person subject to this chapter who--

. . . .

(3) commits a sexual act upon another person when the other person is incapable of consenting to the sexual act due to--

(A) impairment by any drug, intoxicant, or other similar substance, and that condition *is known* or *reasonably should be known* by the person[.]

(Emphasis added.)

[2] Section 3124.1 of the Crimes Code provides: "Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person

should therefore be classified as a Tier III sex offender under Pennsylvania's Sex Offender Registration and Notification Act (SORNA),[3] 42 Pa. C.S. §§ 9799.10-.41,

---

commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent."

[3] As we explained in *Dougherty v. Pennsylvania State Police*, 138 A.3d 152 (Pa. Cmwlth. 2016) (en banc):

> Courts have also referred to SORNA as the Adam Walsh Act. SORNA is the General Assembly's fourth enactment of the law commonly referred to as Megan's Law. Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter. Megan's Law II[, the Act of May 10, 2000, P.L. 74,] was enacted on May 10, 2000[,] in response to Megan's Law I being ruled unconstitutional by our Supreme Court in *Commonwealth v. Williams*, . . . 733 A.2d 593 ([Pa.] 1999). Our Supreme Court held that some portions of Megan's Law II were unconstitutional in *Commonwealth v. Gomer Williams*, . . . 832 A.2d 962 ([Pa.] 2003), and the General Assembly responded by enacting Megan's Law III[, the Act of November 24, 2004, P.L. 1243,] on November 24, 2004. The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16945, and the Pennsylvania General Assembly responded by passing SORNA on December 20, 2011[,] with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa. C.S. § 9799.10(1). SORNA went into effect a year later on December 20, 2012. Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. [*Cmwlth.*] *v. Neiman*, . . . 84 A.3d 603, 616 ([Pa.] 2013). However, by the time it was struck down, Megan's Law III had been replaced by SORNA.

*Dougherty*, 138 A.3d at 155 n.8. Our Supreme Court, by decision and order dated July 19, 2017, declared SORNA unconstitutional in *Commonwealth v. Muniz*, 164 A.3d 1189, 1193 (Pa. 2017), *cert. denied*, 138 S. Ct. 925 (2018).

The General Assembly responded to the *Muniz* decision by enacting the Act of February 21, 2018, P.L. 27 (Act 10). Shortly thereafter, the General Assembly reenacted and amended various provisions of Act 10 by the Act of June 12, 2018, P.L. 140 (Act 29). The statutory provisions of Acts 10 and 29 are set forth at 42 Pa. C.S. §§ 9799.10-.75, and we will refer to them herein as SORNA II.

2

which has since been replaced by SORNA II. For the reasons set forth below, we reverse PSP's order.

In March 2014, at a trial by general court-martial, enlisted members of the armed forces, also known as court members, found Petitioner guilty of a violation of Article 120 of the UCMJ for "commit[ting] a sexual act upon [an airman] by penetrating [her] vulva . . . with his penis, when [she] was incapable of consenting to the sexual act because she was impaired by an intoxicant, to wit: alcoholic beverages, a condition that was known or reasonably should have been known by [Petitioner]." (Reproduced Record (R.R.) at 106.) Petitioner was sentenced to receive a reduction in military rank/pay grade, to be dishonorably discharged, and to serve 60 days of confinement. (*Id.* at 107.) Petitioner appealed his conviction to the United States Navy-Marine Corps Court of Criminal Appeals (Military Appeals Court), which upheld the court members' finding of guilt and sentence. (*Id.* at 109-12.)

In May 2014, while the appeal of his military conviction was still pending, Petitioner registered as a sex offender with PSP. (R.R. at 44, 59.) Shortly thereafter, on June 12, 2014, PSP's Megan's Law Section made a determination that Petitioner's military conviction is comparable to a conviction under Section 3124.1 of the Crimes Code and classified Petitioner as a Tier III sex offender. (*Id.* at 114.) By letter dated June 9, 2016, after his military conviction became final, Petitioner requested that PSP reconsider his classification as a Tier III sex offender, contending (1) that the military offense for which he was convicted is properly analogous to a Tier I offense, not a Tier III offense, and (2) that SORNA's irrebuttable presumption that all sex offenders pose a high risk of recidivism is unconstitutional as applied to Petitioner because it violates his right to due process.

3

By letter dated June 24, 2016, PSP responded to Petitioner's request, stating that, after a review of Petitioner's file, the relevant statutory provisions, and pertinent case law, PSP determined that Petitioner's military conviction was comparable to a conviction of sexual assault under Section 3124.1 of the Crimes Code, and, therefore, Petitioner was properly classified as a Tier III sex offender.

Petitioner then filed an action in this Court's original jurisdiction in the nature of a request for injunctive and declaratory relief against PSP relative to PSP's classification of Petitioner as a Tier III sex offender under SORNA. In his amended petition for review, Petitioner sought: (1) an order requiring PSP to conduct an official review of his conviction under Article 120 of the UCMJ, review his sex offender registration status, and issue a final, appealable decision with regard to his sex offender registration status; and (2) an order requiring PSP to reclassify him as a Tier I sex offender or, in the alternative, a declaration that SORNA's irrebuttable presumption that all sex offenders have a high risk of recidivism is unconstitutional as applied to Petitioner. Upon closure of the pleadings, Petitioner filed an application for summary relief, contending, *inter alia*, that PSP violated his due process rights when PSP rendered its equivalency determination and classified him as a Tier III sex offender based upon his military conviction without conducting an evidentiary hearing. Petitioner suggested that, because his conviction under the UCMJ was not the same as any conviction under Pennsylvania law, PSP could not just simply review his file and the relevant statutory provisions and case law to determine his appropriate sex offender classification. Rather, PSP first had to analyze the severity of the military offense for which he was convicted to determine a comparable offense under Pennsylvania law.

4

By opinion and order dated July 16, 2019, this Court concluded that, "because [Petitioner] was convicted of an offense not specifically enumerated in SORNA's tier classification scheme, PSP necessarily engaged in a nonministerial act when it [conducted its equivalency determination and thereafter] classified Petitioner as a Tier III sex offender." *Lopuchin v. Pa. State Police* (Pa. Cmwlth., No. 587 M.D. 2016, filed July 16, 2019), slip op. at 11. This Court further concluded that PSP's equivalency determination constituted an invalid adjudication, because, "in rendering [such] equivalency determination, PSP did not afford Petitioner 'reasonable notice of a hearing and an opportunity to be heard,' as required by Section 504 of the Administrative Agency Law[,]" 2 Pa. C.S. § 504. *Id.* As a result, this Court granted Petitioner's application for summary relief only to the extent that it sought an order declaring that PSP was required to "provide Petitioner with a post-determination administrative remedy and adjudication on the question of whether [Petitioner] should be designated as a Tier III sex offender as a result of his military conviction." *Id.* at 12.

In response thereto, on October 2, 2019, PSP appointed a hearing examiner to preside over the post-determination administrative appeal hearing. The hearing examiner conducted the hearing on December 5, 2019.[4] At that time, PSP presented

---

[4] At the beginning of the December 5, 2019 hearing, in response to a request from the parties' counsel to define the scope of both the hearing and the hearing examiner's review of PSP's Megan's Law Section's equivalency determination, the hearing examiner noted that he had been tasked to make one of three recommendations: (1) to affirm the Megan's Law Section's equivalency determination and sex offender classification for Petitioner; (2) to reverse the Megan's Law Section's equivalency determination and sex offender classification for Petitioner; or (3) to propose an alternative equivalency determination and sex offender classification for Petitioner based upon the evidence presented at the hearing. (R.R. at 30.) Nevertheless, after an off-the-record discussion held at the conclusion of the hearing, the parties' counsel noted that they had agreed that they would "limit [the hearing examiner's] decision . . . to whether PSP did or did not make a proper equating decision" with respect to Article 120 of the UCMJ, 10 U.S.C.

5

the testimony of Sergeant Orvis E. Rowles, Jr. (Sergeant Rowles), who has been the commander of PSP's Megan's Law Section since July 2017. (R.R. at 38-39, 58.) Sergeant Rowles testified that the individual who performed Petitioner's equivalency determination left his employment with the Megan's Law Section before Sergeant Rowles took over as commander. (*Id.* at 41, 74.) Sergeant Rowles explained, however, that, prior to the hearing, he reviewed and familiarized himself with the file maintained on Petitioner by the Megan's Law Section in its Sex Offender Registration Tool system, which included a copy of the results from his military trial. (*Id.* at 41-42, 44-45, 106-08.) Sergeant Rowles stated that, based upon the specification for Petitioner's military offense as set forth in the results from his military trial, Petitioner was convicted of a violation of 10 U.S.C. § 920(b)(3)(A). (*Id.* at 52-53.) Sergeant Rowles explained that, in order to make its equivalency determination, the Megan's Law Section reviewed the elements of 10 U.S.C. § 920(b)(3)(A) and compared them to the elements of Pennsylvania sexual offenses. (*Id.* at 54-56, 73-74.) Sergeant Rowles explained further that, ultimately, the Megan's Law Section determined that Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) is comparable to a violation of Section 3124.1 of the Crimes Code, which is a Tier III sexual offense. (*Id.* at 53-56, 73.)

On May 18, 2020, the hearing examiner issued a proposed adjudication and order, recommending that the equivalency determination made by PSP's Megan's Law Section—*i.e.*, that Petitioner had been convicted of a Tier III sexual offense— be affirmed. In so doing, the hearing examiner concluded that Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) was for a military offense comparable to

---

§ 920(b)(3)(A), and Section 3124.1 of the Crimes Code, and that they would not waive the ability to address, in the future, whether any other Pennsylvania offenses could potentially be comparable to a violation of Article 120 of the UCMJ, 10 U.S.C. § 920(b)(3)(A). (*Id.* at 80-81.)

those offenses identified in Section 9799.14(d) of SORNA.[5]  The hearing examiner,

relying upon a statement made by the Military Appeals Court in its opinion

[5] Section 9799.14(d) of SORNA provides:

(d) Tier III sexual offenses.--The following offenses shall be classified as Tier III sexual offenses:

    (1) 18 Pa. C.S. § 2901(a.1) (relating to kidnapping).

    (2) 18 Pa. C.S. § 3121 (relating to rape).

    (3) 18 Pa. C.S. § 3122.1(b) (relating to statutory sexual assault).

    (4) 18 Pa. C.S. § 3123 (relating to involuntary deviate sexual intercourse).

    (5) 18 Pa. C.S. § 3124.1 (relating to sexual assault).

    (6) 18 Pa. C.S. § 3124.2(a.1) and (a.4)(2).

    (7) 18 Pa. C.S. § 3125 (relating to aggravated indecent assault).

    (8) 18 Pa. C.S. § 3126(a)(7).

    (9) 18 Pa. C.S. § 4302(b) (relating to incest).

    (10) 18 U.S.C. § 2241 (relating to aggravated sexual abuse).

    (11) 18 U.S.C. § 2242 (relating to sexual abuse).

    (12) 18 U.S.C. § 2244 where the victim is under 13 years of age.

    (13) A comparable military offense or similar offense under the laws of another jurisdiction or country or under a former law of this Commonwealth.

    (14) An attempt, conspiracy or solicitation to commit an offense listed in paragraph (1), (2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12) or (13).

    (15) (Reserved).

    (16) Two or more convictions of offenses listed as Tier I or Tier II sexual offenses.

    (17) One conviction of a sexually violent offense and one conviction of a sexually violent offense as defined in section 9799.55 (relating to registration).

As explained more fully above, the General Assembly replaced SORNA with SORNA II sometime after PSP's Megan's Law Section made its equivalency determination on June 12, 2014. Given, however, that we are reviewing PSP's order affirming the equivalency determination made by its Megan's Law Section, we will continue to cite and refer to SORNA, rather than SORNA II,

7

upholding Petitioner's conviction—*i.e.*, that the Military Appeals Court "[found] compelling evidence that [Petitioner] was aware of [the airman's] intoxicated state and intentionally acted to take advantage of her incapacitated condition"—reasoned that Petitioner "was not convicted upon the arguably negligent element of 'reasonably should [have] known' of the victim's impairment, but instead that condition was 'known' by him." (R.R. at 111, 171 n.5.) Based on his presumption that Petitioner was convicted because he "knew" of the airman's intoxicated state, the hearing examiner further reasoned:

> The *mens rea* requirement for [Petitioner's] conviction included, that he "knew" that his victim was impaired by an intoxicant. Because this military *mens rea* standard is at least as high as that for the Pennsylvania crime, the listed Pennsylvania offenses and the military offense of sexual assault for which [Petitioner] was convicted have a sufficiently comparable *mens rea* requirement.
>
> Tier III sexual offenses involving sexual intercourse thus include as those other elements: (1) the victim is unconscious or unaware that sexual intercourse is occurring, (2) the victim has a mental disability that renders the victim incapable of consent, (3) there was no consent, or (4) the victim is physically incapable or [sic] declining participation or communicating unwillingness to participate. An offense where the victim is incapable of consenting to the sexual act due to impairment by intoxication and that condition is known by the defendant is certainly comparable. There is no consent with a person who is incapable of consenting. While these various sexual offenses involve differing elements, they all target the same behavior by the defendant—having sexual intercourse with someone despite recklessly disregarding whether the victim consented. This is the same behavior targeted by the military offense—committing a sexual act, *i.e.*, having sexual intercourse, with a person incapable of consenting due to impairment by intoxication known to the defendant. The public policy behind all these offenses is to provide [sic] taking advantage of someone's lack of consent or inability to consent to sexual intercourse. The military

---

throughout the remainder of this opinion. Nevertheless, we note that the statutory provisions at issue in this case, namely 42 Pa. C.S. §§ 9799.14 and 9799.15, are substantially similar under both SORNA and SORNA II.

offense of sexual assault for which [Petitioner] was convicted is comparable to the Tier III sexual offenses for which reporting is required.

. . . . For none of the Tier II or Tier I or lesser offenses is the victim's consent or ability to consent such as by an impairment an element. For none of these offenses does an element touch upon the victim's consent or ability to consent. The military offense of sexual assault for which [Petitioner] was convicted is not comparable to these Tier II, Tier I[,] and lesser Pennsylvania sexual offenses involving sexual intercourse.

(R.R. at 9-11 (footnote omitted) (citations omitted).) By order dated June 30, 2020, PSP adopted the hearing examiner's proposed adjudication and order as its own final adjudication and order. Petitioner then appealed PSP's order to this Court.

On appeal,[6] Petitioner argues: (1) PSP committed an error of law by concluding that Petitioner's conviction under Article 120 of the UCMJ, 10 U.S.C. § 920(b)(3)(A), is equivalent to a conviction under Section 3124.1 of the Crimes Code; (2) PSP violated the rule of lenity by classifying Petitioner as a Tier III sex offender rather than a Tier I or Tier II sex offender; and (3) SORNA's irrebuttable presumption that all Tier III sex offenders have a high risk of recidivism is unconstitutional as applied to Petitioner.

First, we will address Petitioner's argument that PSP committed an error of law by determining that his conviction under 10 U.S.C. § 920(b)(3)(A) is comparable to a conviction under Section 3124.1 of the Crimes Code, because PSP failed to consider the significant differences between a conviction under 10 U.S.C. § 920(b)(3)(A) and a conviction under Section 3124.1 of the Crimes Code.

---

[6] This court "will affirm the decision of an administrative agency unless constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or any finding of fact made by the agency and necessary to support its adjudication is unsupported by substantial evidence." *D'Alessandro v. Pa. State Police*, 937 A.2d 404, 409 (Pa. 2007) (citing Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704).

9

More specifically, Petitioner contends that, in making its equivalency determination, PSP focused solely on the basic elements of each offense—*i.e.*, the involvement of sexual intercourse without consent. Petitioner suggests that this "narrow analysis" neglects to consider the substantial differences between the *mens reas* required for each offense, the potential sentence for each offense, and the potential grading for each offense, all factors that must be considered given the punitive nature of SORNA. With this in mind, Petitioner contends that there is a significant difference between the *mens rea* required for a conviction under 10 U.S.C. § 920(b)(3)(A) and the *mens rea* required for a conviction under Section 3124.1 of the Crimes Code—*i.e.*, a conviction under 10 U.S.C. § 920(b)(3)(A) can be based upon a negligence *mens rea*,[7] whereas a conviction under Section 3124.1 of the Crimes Code requires the offender to act with specific intent. Petitioner further contends that PSP's reliance upon the Military Appeals Court's opinion to infer that Petitioner was convicted, not under a negligence *mens rea* standard, but rather, because he "knew" that the airman could not consent, is misplaced, because the Military Appeals Court's opinion "does not have any bearing on the *mens rea* standard used by the [court members] in the original court[-]martial" but, instead, "exists as part of the

---

[7] In his brief to this Court, Petitioner focuses at least a portion of his argument relevant to the *mens rea* required by 10 U.S.C. § 920(b)(3)(A) on the military judge's instructions to the court members during Petitioner's military trial. Petitioner did not, however, introduce the transcript from his military trial or any other document that would have contained the content of such instructions into evidence at the time of the December 5, 2019 hearing. Rather, Petitioner attempted to supplement the record by attaching a copy of certain pages of the transcript from his military trial to his post-hearing submission to the hearing examiner. (*See* R.R. at 132, 137-43.) PSP objected to Petitioner's attempt to supplement the record, arguing that the appropriate time and place for the admission of such evidence was at the time of the December 5, 2019 hearing. (*See id.* at 153.) Based upon our review of the hearing examiner's proposed report, it does not appear that the hearing examiner admitted the contents of the military judge's instructions to the court members into the evidentiary record. Thus, we will not consider them on appeal.

10

[M]ilitary [A]ppeals [C]ourt's determination that 'a rational factfinder could have found beyond a reasonable doubt that [Petitioner] committed the offense.'" (Petitioner's Br. at 16 (quoting R.R. at 111).) Petitioner further argues that there is also a significant difference in the sentence that Petitioner received for his conviction under 10 U.S.C. § 920(b)(3)(A)—*i.e.*, dishonorable discharge, reduction in military rank, and 60 days of confinement—and the possible sentence under Section 3124.1 of the Crimes Code for a second-degree felony—*i.e.*, a minimum of 36 to 54 months of confinement. In sum, Petitioner suggests that, when these significant differences are taken into consideration, it is clear that a conviction under 10 U.S.C. § 920(b)(3)(A) is not comparable to a conviction under Section 3124.1 of the Crimes Code.

In response, PSP argues that it properly focused the scope of its equivalency determination on a review of the elements of each offense, as it was ordered to do by this Court, and concluded that a conviction under 10 U.S.C. § 920(b)(3)(A) is comparable to a conviction under Section 3124.1 of the Crimes Code. PSP further argues that there is no significant difference between the *mens rea* required by 10 U.S.C. § 920(b)(3)(A) and the *mens rea* required by Section 3124.1 of the Crimes Code, as the least culpable *mens rea* required by both offenses is recklessness. PSP, relying upon the statement made by the Military Appeals Court in its opinion upholding Petitioner's conviction, further contends that, contrary to his contentions, Petitioner "was convicted not because he acted negligently or recklessly, but because he acted intentionally." (PSP's Br. at 13.) Ultimately, PSP argues that its determination that Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) is comparable to a conviction under Section 3124.1 of the Crimes

11

Code is supported by substantial evidence, and, therefore, its determination should be affirmed on appeal.

SORNA established a three-tiered classification system for sex offenders in Pennsylvania—Tier I sex offenders, Tier II sex offenders, and Tier III sex offenders. Section 9799.14 of SORNA. A sex offender's tier classification is determined based upon the sexual offense for which he/she was convicted and defines the period during which he/she is required to register with PSP—15 years for a Tier I sex offender, 25 years for a Tier II sex offender, and lifetime for a Tier III sex offender. Sections 9799.14 and 9799.15 of SORNA. Included within SORNA's tier classification system for sex offenders are those individuals who have been convicted of "a comparable military offense." Sections 9799.14 and 9799.15 of SORNA. When an individual who has been convicted of a military sexual offense registers with PSP, PSP is tasked with the responsibility of determining the comparability of that individual's military sexual offense to a Pennsylvania sexual offense for purposes of sex offender tier classification and registration requirements. Section 9799.14(b)(21), (c)(17), and (d)(13) of SORNA. This requires PSP to consider the elements of the convicted offense and determine whether such elements are comparable to the elements of a Pennsylvania crime. *M.S. v. Pa. State Police*, 212 A.3d 1142, 1148 (Pa. Cmwlth. 2019); *see also Freeman v. Pa. State Police*, 2 A.3d 1259, 1262 (Pa. Cmwlth. 2010) (noting that "[t]o determine the issue of equivalency," at least in context of denial of application to purchase and carry firearm, "the necessary focus is on the elements of the offenses").

Here, PSP concluded that Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) is comparable to a conviction under Section 3124.1 of the Crimes

12

Code.[8] PSP's entire analysis, however, is based upon a presumption that Petitioner was convicted because he "knew" that the airman was intoxicated and, therefore, unable to consent. This presumption is not supported by the evidentiary record. The document setting forth the results of Petitioner's military trial demonstrates that Petitioner was found guilty of a violation of Article 120 of the UCMJ for "commit[ting] a sexual act upon [an airman] by penetrating [her] vulva . . . with his penis, when [she] was incapable of consenting to the sexual act because she was impaired by an intoxicant, to wit: alcoholic beverages, a condition that was known or reasonably should have been known by [Petitioner]." (R.R. at 106.) There is absolutely nothing within that document that specifies whether the court members found Petitioner guilty because he "knew" of the airman's intoxicated state and inability to consent or because he "should have known" of the airman's intoxicated state and inability to consent. *See* 10 U.S.C. § 920(b)(3)(A). Thus, in order to make the presumption that Petitioner "knew" of the airman's intoxicated state and inability to consent at the time of the offense, PSP relied upon a statement made by the Military Appeals Court in its opinion upholding Petitioner's conviction—*i.e.*, that the Military Appeals Court "[found] compelling evidence that [Petitioner] was aware

---

[8] The hearing examiner, in his proposed adjudication and order, went even further and concluded that Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) is comparable to all of the offenses enumerated in Section 9799.14(d) of SORNA. Given, however, that the hearing examiner's proposed adjudication and order, which was adopted as a final order by PSP, affirmed the June 12, 2014 determination made by PSP's Megan's Law Section that Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) is comparable only to a conviction under Section 3124.1 of the Crimes Code, and the parties did not consider the potential equivalency of other Pennsylvania sexual offenses at the time of the December 5, 2019 hearing, we will limit our review to simply whether Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) is comparable to a conviction under Section 3124.1 of the Crimes Code. Thus, nothing set forth in this decision should be construed to mean that this Court does not believe that there is a Pennsylvania sexual offense that could be comparable to an offense under 10 U.S.C. § 920(b)(3)(A); this Court has simply not undertaken such an analysis.

13

of [the airman's] intoxicated state and intentionally acted to take advantage of her incapacitated condition." (R.R. at 111, 171 n.5.) PSP ignores, however, that the Military Appeals Court, an appellate body, reviewed the record to determine whether there was sufficient evidence to support Petitioner's conviction and made that statement simply as a means to conclude that "a rational factfinder could have found beyond a reasonable doubt that [Petitioner] committed the offense." (*Id.* at 111.) This does not mean that the court members necessarily reached the same conclusion. There is simply no way for the Military Appeals Court, PSP, or this Court to know whether the court members found Petitioner guilty of a violation of 10 U.S.C. § 920(b)(3)(A) because he "knew" or because he "should have known" of the airman's intoxicated state and inability to consent to the sexual act, either of which would support a conviction under the UCMJ.

With this in mind, we must now consider whether Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) is comparable to a conviction under Section 3124.1 of the Crimes Code. As explained more fully above, the requisite culpability—*i.e.*, *mens rea*—associated with Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) is that Petitioner either "knew" or "reasonably should have known" of the airman's intoxicated state and inability to consent to the sexual act. Under Pennsylvania criminal law, "reasonably should have known" is most synonymous with negligent culpability. *See* Section 302(b)(4) of the Crimes Code, 18 Pa. C.S. § 302(b)(4) ("A person acts negligently with respect to a material element of an offense when *he should be aware* of a substantial and unjustifiable risk that the material element exists or will result from his conduct." (emphasis added)). While not specifically set forth therein, the offense of sexual assault under

14

Section 3124.1 of the Crimes Code requires the offender to act intentionally,[9] knowingly,[10] or recklessly.[11] *See* Section 302(c) of the Crimes Code, 18 Pa. C.S. § 302(c) ("When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto."). Negligent conduct—*i.e.*, a sexual act with a complainant when the person "should be aware" that the complainant was incapable of consent—is not encompassed within Section 3124.1 of the Crimes Code. For these reasons, we agree with Petitioner that, because his conviction under 10 U.S.C. § 920(b)(3)(A) could have been based upon a negligence *mens rea*—*i.e.*, that he "should have known" of the airman's intoxicated state and inability to consent to the sexual act—and, the fact that negligent conduct is not included within the offense of sexual assault under Section 3124.1 of the Crimes Code, Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) is not comparable to a conviction under Section 3124.1 of the Crimes Code.[12] As a result, we conclude that PSP committed an error of law by determining

---

[9] A person acts intentionally if "it is his conscious object to engage in conduct of that nature or to cause such a result" or "he is aware of the existence of such circumstances or he believes or hopes that they exist." Section 302(b)(1)(i)-(ii) of the Crimes Code, 18 Pa. C.S. § 302(b)(1)(i)-(ii).

[10] A person acts knowingly if "he is aware that his conduct is of that nature or that such circumstances exist" or "he is aware that it is practically certain that his conduct will cause such a result." Section 302(b)(2)(i)-(ii) of the Crimes Code, 18 Pa. C.S. § 302(b)(2)(i)-(ii).

[11] A person acts recklessly if "he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." Section 302(b)(3) of the Crimes Code, 18 Pa. C.S. § 302(b)(3).

[12] This is not to say that a conviction under 10 U.S.C. § 920(b)(3)(A) could never be comparable to a conviction under Section 3124.1 of the Crimes Code. There could be circumstances where the military record is sufficiently specific for PSP to establish the necessary comparability—*i.e.*, circumstances where the military record evidences that the court members themselves found that the individual "knew" that the other person was impaired, such that the other person could not legally consent to the sexual act. Here, however, PSP could not, due to the lack

15

that Petitioner's conviction under 10 U.S.C. § 920(b)(3)(A) is comparable to a conviction under Section 3124.1 of the Crimes Code.[13]

Accordingly, we reverse PSP's final order.

_____
P. KEVIN BROBSON, President Judge

---

of record evidence, establish that the conviction was based on a determination that Petitioner "knew," as opposed to "should have known," that the airman was impaired at the time of the sexual act.

[13] Given our disposition above, we need not consider Petitioner's remaining arguments on appeal—*i.e.*, that PSP violated the rule of lenity by classifying Petitioner as a Tier III sex offender rather than a Tier I or Tier II sex offender and that SORNA's irrebuttable presumption that all Tier III sex offenders have a high risk of recidivism is unconstitutional as applied to Petitioner. With respect to Petitioner's irrebuttable presumption argument, however, we note that, in the event that any future equivalency determination made by PSP results in a classification of Petitioner as a Tier III sex offender, or lifetime sex offender registrant, Petitioner would, at that time, have the ability to challenge the constitutionality of the alleged irrebuttable presumption created by SORNA. Such a challenge, however, is better suited to an action brought in this Court's original jurisdiction.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A.L.,                                    :
                    Petitioner           :
                                         :
            v.                           :     No. 674 C.D. 2020
                                         :
Pennsylvania State Police,               :
                    Respondent           :

# **O R D E R**

AND NOW, this 8th day of March, 2021, the order of the Pennsylvania State Police, dated June 30, 2020, is REVERSED.

_____
P. KEVIN BROBSON, President Judge